## TODD *v.* RATZ.

1. APPEAL AND ERROR—CHANCERY CASE—DE NOVO REVIEW—SPECIFIC
   PERFORMANCE.

   Purchaser's suit for specific performance of written contract
   for sale of realty, being a chancery case, is reviewed *de novo*
   by the Supreme Court.

2. VENDOR AND PURCHASER—EARNEST MONEY—DEFECTIVE TITLE—
   REAL ESTATE BOARD'S UNIFORM PURCHASE AGREEMENT.

   Vendor under county real estate board's uniform purchase agree-
   ment could not discharge his obligation thereunder by return-
   ing earnest money notwithstanding provision in the agreement
   that if title were not good the earnest money would be re-
   funded where, after vendor and purchaser discovered that an
   undivided half interest in the realty was in the estate of the
   vendor's deceased sister and the contracting parties agreed
   that vendor would take necessary steps to acquire full title
   and the sale would then be consummated, vendor did acquire
   full title.

3. SAME—RETURN OF BINDER PAYMENT.

   Where purchaser's husband expressly refused tender of return
   of binder payment made under county realty board's uniform
   purchase agreement, a vendor's delivery of such refund con-
   cealed in an envelope did not relieve vendors from obligation
   under the contract even though purchaser did not return the
   binder.

4. SAME—SPECIFIC PERFORMANCE—TENDER OF PURCHASE PRICE—RE-
   FUND OF BINDER PAYMENT.

   Purchaser was entitled to specific performance under county real
   estate board's uniform purchase agreement upon tender of full
   purchase price after vendors had acquired full title, though
   at time agreement was signed a half interest was in his de-
   ceased sister's estate and before proceedings to acquire such
   title were completed vendor had attempted to refund the binder
   payment and rescind the contract but purchaser's husband ex-
   pressly refused the refund.

Appeal from Genesee; Gadola (Paul V.), J. Submitted October 13, 1945. (Docket No. 90, Calendar No. 43,091.) Decided December 3, 1945.

Bill by Leitha G. Todd against George Ratz and wife for specific performance of a written agreement for sale of real estate. Decree for plaintiff. Defendant appeals. Affirmed.

*Brownell & Gault,* for plaintiff.

*Sherman M. Bean,* for defendant.

STARR, C. J. Defendants appeal from a decree granting plaintiff specific performance of a written agreement for the sale and purchase of certain lots in the city of Flint. On January 28, 1944, plaintiff, as purchaser, and defendants, as sellers, entered into the following agreement:

"GENESEE COUNTY REAL ESTATE BOARD
UNIFORM PURCHASE AGREEMENT

"I/we, the undersigned, agree to purchase the premises situated in the city of Flint, Genesee county, Michigan, viz:

"Lots 15, 16, 70 and 71 of Atherton Manor, Flint, Michigan, also lot 72 with the exception of the east 7 foot in Atherton Manor.

"Being the premises known as 956 Waldman st. and pay therefor the sum of $3,300 on terms as follows: cash.

"The seller agrees to pay the February, 1944, instalment of city taxes.

"I/we herewith deposit $50 as earnest money to apply on the purchase price. If proposal is not accepted or the title is not good, this amount to be refunded, otherwise to be retained.

"The purchase price to be consummated by:

"The delivery of warranty deed conveying marketable title subject to the restrictions upon the use of the premises of record, and payment of the purchase money as above specified, all of which is to be consummated within 15 days from the date hereof.

"Abstract of title or title insurance policy certified to date, or title search to be submitted to purchaser for his/their examination.   *  *  *

"Possession to be given the date of completion of this agreement.

"Dated at Flint, Michigan, January 28, 1944.

"(Signed)    Leitha G. Todd, Purchaser.   *  *  *

"Witness Owen Todd.

"Acceptance: the above proposal is hereby accepted and I/we hereby agree to sell and convey to the above named purchaser the premises herein described at the time and subject to the terms above set forth.   *  *  *

"(Signed)    George Ratz, Seller.

"(Signed)    Eliza Ratz, Seller.

"Witness Margaret Houpt."

Plaintiff paid the "earnest money" deposit of $50, as provided in the agreement, and defendants delivered the abstracts of title covering the property to plaintiff's husband, who was acting as her agent. Examination of the abstracts disclosed that defendant George Ratz owned only a one-half interest in the property and that the estate of his deceased sister owned the other half. Defendants were advised of this defect in the title, and they promptly caused proceedings to be instituted for the probate of the estate of the sister, which resulted in the entire title being vested in defendant George Ratz. Prior to the completion of the proceedings to clear the title, George Ratz went to plaintiff's home and attempted to refund the binder payment by tendering $50 in currency. Plaintiff's husband expressly refused the

tender, whereupon Ratz handed him an envelope and then hurriedly left the house. When opened after Ratz had left, the envelope was found to contain $50. Plaintiff's husband testified regarding this occurrence as follows:

"Mr. Ratz and Mr. Goss came in and Mr. Ratz informed me that he wanted to give me the $50 back. I said, 'Well, no, Mr. Ratz, * * * we want the property, and therefore we will give you whatever time is necessary to clear title on this property.' * * * So Mr. Ratz tried to hand me the $50 a couple of different times and I still refused it, and finally, after quite a lot of talk, * * * Mr. Ratz jumped to his feet and said, 'Well, you say you will not take this $50 will you?' I said, 'No, Mr. Ratz, I won't, not today,' and, 'Well,' he said, 'If you won't take it you will take this,' and he pulls an envelope out of his pocket, hands it to me. * * * It ran through my mind that * * * he might wish to serve me with some paper, which I was not afraid of; I took the envelope. I no more than got the envelope in my hand and Mr. Ratz started for the door and beat it, the minute he got outside of the door he started going for the car as fast as he could go. When I tore the envelope open I found the $50 in the envelope. I hollered to Mr. Ratz, told him that he was making an error, that that was absolutely wrong, I did not think it would be of any value for him to do that kind of a trick. By this time he was in his car and I don't know if he even heard everything I told him."

The above testimony of plaintiff's husband is substantially corroborated by that of Mr. Goss, who had represented defendants in negotiating the sale and who accompanied defendant George Ratz to plaintiff's home. Plaintiff did not return the $50 found in the envelope. When the proceedings to clear the title had been completed and George Ratz had obtained full title, plaintiff promptly tendered the full purchase price of $3,300 in currency and

demanded that defendants execute a warranty deed to her. Defendants refused the tender and refused to execute the deed. Plaintiff then began the present suit for specific performance of the above-quoted agreement. The trial judge entered a decree granting specific performance, and defendants appeal. This being a chancery case, we review *de novo.*

The only question presented is whether or not, under the terms of the agreement and the facts and circumstances shown, plaintiff was entitled to specific performance. Defendant George Ratz testified that when the agreement was signed, he thought he owned full title to the property. It is admitted that examination of the abstracts of title disclosed that Ratz owned only a one-half interest and that the estate of his deceased sister owned the other half. It is also admitted that when this defect in title was discovered, Ratz caused his sister's estate to be probated for the purpose of establishing full title in himself. Plaintiff's husband testified as follows regarding his interview with Ratz relative to the defect in title:

"*Q.* Mr. Todd, after that agreement was entered into by the parties, what was the next thing you did?

"*A.* Well, I took the abstracts that he (defendant George Ratz) gave me, took them to my attorney for examination, and my attorney informed me that the title was not exactly clear, in other words that Mr. and Mrs. Ratz were not the complete owners of the property, that according to the abstract of title Mr. Ratz's sister, who had died, was a half owner of the property.

"*Q.* After receiving that information did you get in touch with Mr. Ratz?

"*A.* I did. * * *

"I told Mr. Ratz that there [would?] have to be something done about cleaning up the title, that I wanted the property, was still willing to give him all the time that was necessary to clear the title.

"*Q.* What did he say?

"*A.* He told me that he would take care of everything. * * *

"*Q.* So it was left then that he would take steps to clear, to get complete title, and you were willing to give him more time to do it?

"*A.* Definitely."

Defendants had expressly agreed to sell and convey the property to plaintiff and to deliver a warranty deed "conveying marketable title," subject to restrictions of record. The agreement provided that if plaintiff's offer to purchase was "not accepted or the title is not good," the amount of the binder payment would be refunded. Although defendants accepted plaintiff's offer, they now contend that because their title was defective, their only obligation was to return the $50 down payment. We cannot agree with this contention. The record reasonably establishes that when the defect in defendants' title was discovered, they agreed, in effect, to take the necessary steps to obtain full title, and that it was also mutually agreed that when the title was cleared, the purchase price would be paid and the sale consummated.

Defendants also contend that because they had returned the binder payment of $50, they were not obligated to convey to plaintiff. However, the record is convincing that plaintiff's husband expressly refused the $50 in currency when it was tendered to him. The attempt of defendant George Ratz to force an acceptance of the tender by handing plaintiff's husband an envelope with $50 concealed in it did not relieve defendants from their obligation under the agreement. Although plaintiff might properly have made some effort to return the $50 which was in the envelope, her failure to do so will not release defendants from their obligation to convey.

The testimony of defendant George Ratz is not convincing, as his answers were evasive and argumentative. The trial judge saw and heard the parties and their witnesses and could better determine the credibility of and weight to be accorded their testimony. Under the terms of the agreement in question and the facts and circumstances shown, the trial judge properly determined that plaintiff was entitled to specific performance of the agreement of sale and purchase. The decree is affirmed. Plaintiff may recover costs of both courts.

North, Carr, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.